```
                    UNITED STATES DISTRICT COURT              FILED
                    NORTHERN DISTRICT OF ALABAMA
                       NORTHEASTERN DIVISION              01 JAN -3 PM 1:46

                                                          U.S. DISTRICT COURT
SHEILA A. MAPLES,              )                           N.D. OF ALABAMA
                               )
     Plaintiff,                )
                               )
v.                             )   Civil Action No. CV-00-S-0878-NE
                               )
JIMMY HALL; GOODWILL           )
INDUSTRIES INTERNATIONAL,      )
INC.,                          )                          ENTERED
                               )
     Defendants.               )                          JAN  3 2001
```



## MEMORANDUM OPINION

This action is before the court on the motion of a non-party, the State of Alabama Department of Industrial Relations ("the Department"), asking the court to quash a subpoena *duces tecum* issued by defendant Goodwill Industries International, Inc. ("Goodwill"). Upon consideration of the pleadings, briefs, and responses of plaintiff and Goodwill to questions posed by this court,[1] the motion will be granted.

### I. BACKGROUND

Sheila Maples was employed by Goodwill as a "warehouse worker" from November of 1992 until March 13, 1999. Throughout that term of employment, Maples was subjected to sexual harassment by defendant Jimmy Hall, "who had represented to her that he was her supervisor."[2] "On many occasions, ... Hall grabbed Plaintiff's

---
[1] By order entered December 21, 2000 (doc. no. 31), this court directed plaintiff and Goodwill to file responses to the Department's motion, answering certain questions posed by the court.

[2] Complaint (doc. no. 1) ¶ 10.

breasts, buttocks and crotch."[3] Maples' complaints to Goodwill's store manager and regional manager were ignored; no action was taken to deter or stop Hall's offensive and unwelcome conduct.[4] When her working conditions became "intolerable," Maples resigned her employment.[5] This action — which is principally based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*[6] — followed.

Goodwill subsequently issued a subpoena *duces tecum* to the Department, requesting that it produce:

> Any and all records, including, but not limited to, claims, statements, documents, writings, correspondence, recordings, and/or memoranda included in any unemployment records of Shelia A. Maples, D.O.B.: 10/6/60, Social Security # 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.

The Department moved to quash (doc. no. 25), asserting that the records sought are "absolutely privileged and confidential" under a state statute providing that:

> Every employing unit shall keep true and accurate work records containing such information as is necessary for the administration of this chapter. Such records shall be open to inspection and be subject to being copied by the director or his authorized representatives at any reasonable time and as often as may be necessary. The director, an appeals tribunal, any member of the

---

[3] *Id.* ¶ 11.

[4] *Id.* ¶¶ 13-15, 17.

[5] *Id.* ¶ 20. Plaintiff contends that her voluntary resignation amounted to a constructive discharge.

[6] Plaintiff's complaint also includes state law claims for assault & battery, negligent hiring, retention, and supervision of defendant Jimmy Hall by Goodwill, and invasion of privacy, but those claims are not immediately relevant to this discussion.

board of appeals created by the industrial relations law or any authorized representative of the director may require from such employer or employing unit such reports covering persons employed by him or it, or employment, wages, hours, unemployment and related matters as are necessary to the effective administration of this chapter. Information thus obtained shall be held confidential, except to the extent necessary for the proper presentation of the contest of a claim, and shall not be published or be open to public inspection in any manner revealing the employer's or employing unit's identity. Any person violating any provision of this section shall be fined not less than $20.00 nor more than $200.00 or imprisoned for not longer than 30 days or both. All letters, reports, communications and other matters, written or oral, from employer or employee to each other or to the director or any of his agents, representatives or employees, or to any official or board functioning under this chapter, which shall have been written, sent, delivered or made in connection with the requirements and administration of this chapter, shall be <u>absolutely privileged</u> and shall not be made the subject matter or basis for any civil action for slander or libel in any court. The director may cause to be made such summaries, compilations, photographs, duplications or reproductions of any records, reports or transcripts thereof or canceled benefit payment checks as he may deem advisable for the effective and economical preservation of the information contained therein, and such summaries, compilations, photographs, duplications or reproductions, duly authenticated, shall be admissible in any proceeding under this chapter if the original record or records would have been admissible therein. The director may provide by regulations for the destruction or disposition, after reasonable periods, of any records, reports, transcripts or reproductions thereof or other papers in his custody, the preservation of which is no longer necessary for the establishment of contribution liability or benefit rights of for any purpose necessary for the proper administration of this chapter, including any required audit thereof.

Alabama Code § 25-4-116 (1975) (emphasis supplied); *see also id.* §§

25-2-22, 25-2-25.[7]

## II. DISCUSSION

### A.   Efficacy of State Privileges in Federal Question Cases

Federal Rule of Evidence 501 provides that "the privilege of a witness, person, government, State, or political subdivision thereof" in a federal court, where the plaintiff's claim and the court's jurisdiction are founded upon a federal statute, "shall be

---

[7] Ala. Code § 25-2-22 (1975) provides:

> Every employer or owner shall furnish to the Department of Industrial Relations or the board of appeals any information which the Department of Industrial Relations or the board of appeals is authorized to require, and shall make true and specific answers to all reasonable questions, whether submitted orally or in writing, authorized to be put to him. The Director of Industrial Relations and any authorized representative of the Department of Industrial Relations shall, for the purpose of examination, have access to and the right to copy from any book, account, record, payroll, paper or documents relating to the employment of workers in such manner as may be reasonable and at reasonable times. Information secured under the provisions of this section shall not be published or be open to public inspection in any manner revealing the employer's or owner's identity; and any officer, member or employee of the Department of Industrial Relations or the board of appeals guilty of violating this provision shall be subject to the penalties provided in this chapter.

Ala. Code § 25-2-25 (1975) sets forth the penalties referenced by § 25-2-22.

> Any person who violates or fails or refuses to comply with any requirement of this chapter or any lawful rule or regulation of the board of appeals adopted pursuant thereto, for which no penalty has been otherwise provided, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than $ 10.00 nor more than $100.00 or shall be imprisoned for not more than six months, or both so fined and imprisoned, for each such offense.  Each day such violation, omission, failure or refusal continues shall be deemed a separate offense.  Any person who shall knowingly testify falsely, under oath, or shall knowingly make, give or produce any false statement or false evidence under oath to the Director of Industrial Relations, or an officer of the Department of Industrial Relations designated by him or to any member of the board of appeals, shall be guilty of perjury.

governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. *See also, e.g., United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) ("[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."); *Hancock v. Hobbs*, 967 F.2d 462, 466-467 (11th Cir. 1992) (holding in § 1983 action that "the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question," and concluding that the federal courts did not recognize state psychiatrist-patient privilege); *American Civil Liberties Union v. Finch*, 638 F.2d 1336, 1342-43 (5th Cir. 1981)[8] (holding in § 1983 case that Fed. R. Evid. 501 did not compel respect for a Mississippi statute making certain sealed documents filed in the state department of archives and history "confidential"); *Sexton v. Poole Truck Lines, Inc.*, 888 F. Supp. 127 (M.D. Ala. 1994) (holding in ADA case that Fed. R. Evid. 501 did not compel respect for Ala. Code § 32-6-43, providing that records received by the Alabama Department of Public Safety "for the purpose of assisting the director [of the Department] in

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

determining whether a person meets the medical, physical or mental standards to be licensed as a driver are ... confidential ... and ... shall not be divulged to any other person, federal, state, or local government or private entity, or used as evidence in any trial..."); *Thorne v. Big "D" Discount Auto Parts of Daleville, Inc.*, 92 F.R.D. 55, 58 (M.D. Ala. 1981) (holding that Ala. Code § 25-4-116 did not bar a plaintiff from obtaining a tape recording of an unemployment compensation hearing for use in a Fair Labor Standards Act action against the plaintiff's former employer). *Cf. United States v. Blasi*, 462 F. Supp. 373 (M.D. Ala. 1979) (holding that Fed. R. Evid. 501 did not compel respect for Ala. Code §§ 25-2-22 and 25-4-116 when documents were requested by a federal Grand Jury).

Moreover, in cases such as this one, where a plaintiff asserts both federal question and supplemental state law claims, the federal rule of privilege still controls. *See* Fed. R. Evid. 501 Advisory Committee Note ("[I]t is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case."); *see also Hancock*, 967 F.2d at 467 (11th Cir. 1992) (holding in § 1983 action that "the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a

pendent state law count which may be controlled by a contrary state law of privilege.").

### B. State Construction of § 25-4-116

The Supreme Court of Alabama held, in *Ex parte Mardis*, 628 So. 2d 605 (Ala. 1993), that "the record of testimony during an unemployment compensation hearing is not privileged information under [Alabama Code] § 25-4-116." *Id.* at 608 (citing *Thorne*, 92 F.R.D. at 58). The *Mardis* court additionally held that the statute did not prevent discovery of documents referenced during testimony.

> Robbins [*i.e.*, the plaintiff's employer] further argues that, even if the testimony [adduced during the unemployment compensation hearing] is not privileged, any transcript of the hearing would refer to material that is privileged and confidential under § 25-4-116, such as documents disclosing payroll information and other confidential personnel records, and that, therefore, any record of the hearing should be absolutely privileged. ... We find these arguments unpersuasive; the trial court has the power to prevent the admission into evidence of any inadmissible portions of the transcript or any reference to privileged employer records.

*Ex parte Mardis*, 628 So. 2d at 608.

### C. The Propriety of Goodwill's Subpoena

Upon initially reviewing the motion to quash, the Department's supporting brief, and Goodwill's responsive brief, this court <u>assumed</u> (i) that Sheila Maples must have submitted to the Department an application for unemployment compensation benefits following resignation of her employment with Goodwill, and (ii)

that Goodwill sought to discover the reasons she stated for that action when applying for benefits. Such information would be relevant, and, discoverable under the principles discussed above: that is, the Department could be compelled to produce a copy of the record of any testimony adduced during any hearing held in connection with plaintiff's application for unemployment compensation benefits following resignation of her employment with Goodwill, together with any claim, statement, document, writing, or other record referred to during that hearing.

Even so, no pleading affirmatively represented that plaintiff had filed for unemployment compensation benefits following resignation of her employment with Goodwill.

Accordingly, this court ordered that Goodwill state "with particularity the precise purpose for seeking production of the contested documents from the Department,"[9] and that plaintiff also state:

1. the exact date on which [she] resigned her employment with Goodwill;

2. whether, following the date on which [she] resigned her employment with Goodwill, she applied for unemployment compensation benefits and, if so, further stating:

   a. the date upon which such application was filed; and

   b. whether benefits were granted and, if so, the

---

[9] Order entered December 21, 2000 (doc. no. 31) at 1.

>    dates upon which the unemployment benefits
>    began and ended; and
>
>    b.  whether benefits were contested by Goodwill,
>        and, if so, further stating:
>
>        i)  whether a hearing was held in connection
>            with Goodwill's contest; and
>
>        ii) if a hearing was held: the date, time,
>            and place of the hearing; the identity of
>            all persons who appeared at the hearing;
>            the identity of the hearing official; the
>            result of the hearing; and, whether a
>            written opinion of decision was rendered
>            and, if so, attaching a copy.[10]

Goodwill's response to the foregoing order confirmed that, at least in part, it sought the production of relevant, discoverable evidence.

>    2.  Goodwill's purpose in seeking production of the
>    contested documents is to obtain any record of testimony,
>    including all supporting documents, regarding Plaintiff's
>    stated reason for ending her employment with Goodwill.
>    Specifically, Goodwill seeks testimony, including all
>    supporting documents, regarding whether Plaintiff ended
>    her employment with Goodwill because she was sexually
>    harassed, subject to a hostile work environment, or
>    constructively discharged.[11]

The rub lies in the fact that Sheila Maples "never applied for unemployment compensation benefits after resigning her employment with Goodwill."[12]

The second purpose stated by Goodwill for issuing the

---

[10] *Id.* at 2 (footnote omitted).

[11] Goodwill's response to the court's December 21, 2000 order (doc. no. 32) ¶ 2, at 1-2.

[12] Plaintiff's response to the court's December 21, 2000 order (doc. no. 33) ¶ 2.

9

contested subpoena sweeps far too broad a path.

>    3.  Goodwill also seeks any record of testimony, including all supporting documents, regarding Plaintiff's claims for unemployment compensation with respect to other employers. Specifically, Goodwill seeks any record of testimony, including all supporting documents, regarding Plaintiff's income from other employers, Plaintiff's date of hire with other employers, and Plaintiff's stated reasons for ending her employment with other employers.
>
>    4.  The information described above is relevant as to Plaintiff's damages claims, including Plaintiff's mental anguish claims. The information is also relevant as to the veracity of Plaintiff's stated reason for ending her employment with Goodwill. [13]

In view of the fact that plaintiff was employed by Goodwill for more than six years, from November of 1992 until March 13, 1999, any information contained in the Department's unemployment compensation records for the period preceding November 1992 would not be relevant to either "Plaintiff's damages claims, including Plaintiff's mental anguish claims," or "the veracity of Plaintiff's stated reason for ending her employment with Goodwill." Moreover, information "regarding Plaintiff's income from other employers, Plaintiff's date of hire with other employers, and Plaintiff's stated reasons for ending her employment with other employers" can be more easily obtained from other, non-privileged sources.

### III. CONCLUSION

For the foregoing reasons, this court concludes that the

---

[13] Goodwill's response to the court's December 21, 2000 order (doc. no. 32) ¶¶ 3 & 4.

Department's motion to quash is due to be granted. An appropriate order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this **3rd** day of January, 2001.

*[signature]*
United States District Judge